UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.           ) | Case No. 21-93 (RC) |
| ) | |
| JOHN D. ANDRIES, ) | |
| ) | |
| Defendant.   ) | |
| ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS ONE, TWO, AND THREE OF THE SUPERSEDING INDICTMENT**

The defendant, John Andries, files this reply to the government's response filed on September 2, 2021. *See* ECF Dkt. No. 22. For the reasons discussed below, Counts 1-3 still fail to state an offense and fail to give proper notice to the defendant.

**I.    The Plain Language of §1515(a)(1)(B) as Interpreted by other Courts, as well as the Legislative History and Congressional Intent of §1512(c)(2), Support a Finding that the Statute Fails to State an Offense.**

The government argues in its response that the plain text defining "official proceeding," as a "proceeding before Congress" is sufficient to conclude that the Electoral Count on January 6 is included in this definition. The government supports this argument by choosing only one definition of "proceeding" from the Oxford English Dictionary, which defines it as "the carrying on of an action or series of actions; action, course of an action; conduct, behavior." *See* Govt. Response at 7. However, if the courts rested on just this definition, then any event would qualify as an "official proceeding" because every event "carries on an action or series of actions." Other courts have not relied on this definition and have interpreted "official proceeding" to disqualify many types of government activities even though the activities "carried on a series of an action

1

or series of actions." *See, e.g., United States v. Sutherland*, 921 F.3d 421, 426 (4th Cir. 2019) (FBI investigation not an "official proceeding" because that term "implies something more formal than a mere investigation"), *cert. denied*, 140 S. Ct. 1106; *United States v. Dunn*, 434 F. Supp. 2d 1203, 1207 (M.D. Ala. 2006) ) (investigation conducted by Bureau of Alcohol, Tobacco, and Firearms not an "official proceeding" because the term encompasses "events that are best thought of as hearings (or something akin to hearings")).

The government further argues that the narrower Black's Law Dictionary definition of "proceeding" would still include the Electoral Count on January 6. *See* Govt. Response at 8. That narrower definition includes, "the business conducted by a court or other official body; *a hearing*." Black's Law Dictionary, "proceeding" (11th ed. 2019). This definition of "proceeding" plainly describes the word to mean "a hearing." The government provides little support for the Joint Session on January 6 being a "hearing." The only support the government provides is that the Joint Session is a formal environment where a decision must be made. *See* Govt. Response at 9. However, the cases the government cite interpret "official proceeding" more narrowly by not only explaining that it must be a formal environment but that there also must be characteristics of a hearing, such as findings of fact, and having the power to issue subpoenas. *See United States v. Kelley*, 36 F.3d at 1127 (explaining the Inspector General was empowered to, and did, issue subpoenas, and compel sworn testimony in conjunction with an investigation). So, it is not just that a decision must be made in a formal environment, but rather that the characteristics surrounding the event must be "akin to a hearing." *Id*. This interpretation is consistent with the congressional intent outlined in the defendant's motion to dismiss.

Although the Electoral Count is in a "formal environment," it is not a "hearing" because it does not have the characteristics associated with a typical hearing. Just because a decision

must be made does not place the session "comfortably within the category of an "official proceeding" as the government suggests. The government does not acknowledge the ceremonial nature of the session but instead attempts to equate it with a hearing. The government points to 3 U.S.C. §15, which technically bestows Congress with the authority to lodge objections; however these "objections" are not the same that exist in a typical proceeding for which the statute intends. As explained in detail in the defendant's motion to dismiss, the session is ceremonial and the objections have no legal significance. The session is not intended to be adversarial and that is because, by the time it takes place, the states have certified that there are no remaining disputes and therefore any objection would be to the technical procedures carried out by the individual states. Simply put, the "counting function" of Congress does not have a "judicial" aspect to it and the "electoral vote is merely ministerial."[1]

The government additionally argues that the Court should not limit its interpretation of "proceeding before the Congress" to encompass only proceedings that are "adversarial" or "adjudicative" in nature. *See* Govt. Response at 10. However, that is exactly what past courts have done, and as a result, they have ruled that these factors are key in determining whether something is an official proceeding or not. *See United States v. Perez*, 575 F.3d 164, 169 (2d Cir. 2009) (ruling the BOP investigation qualifies as an "official proceeding" because the "review panel must determine if there has been a violation of BOP policy, must make findings, and may decide to refer the matter to senior departmental authorities); *United States v. Ramos*, 537 F.3d 463 (5th Cir. 2008) (holding that "official proceeding" is consistently used in a manner that contemplates a formal environment in which people are called to appear or produce

---

[1] Vasan Kesavan, "*Is the Electoral Count Act Unconstitutional?*" 80 North Carolina Law Review 1653, 2002, at page 258.

documents").

The government cites *United States v. Ring*, 628 F. Supp. 2d 195 (D.D.C. 2009) to argue that §1512(c)(2)'s application is not limited to the destruction of documents. *See* Govt. Response at 12. However, that case involves a defendant who made false statements to a grand jury and the court's inquiry was whether the statements qualified as "obstruction." *Id*. at 224. That case did not decide whether the grand jury hearing constituted an "official proceeding" and so has no bearing on the immediate case. Mr. Andries's argument is that the Electoral Count on January 6 is not like grand jury hearings, which are clearly "official proceedings."

## II.     Even if the Court determines that the Electoral Count is an "Official Proceeding," 18 U.S.C. §1512(C)(2) is Unconstitutionally Vague

The government argues in its response by citing to *United States v. Lanier*, 520 U.S. 259, 267 (1997) that the "touchstone" of vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." This common sense and practical standard is exactly what the defendant submits is missing here. On January 6, 2021, Mr. Andries could not possibly have been on notice that he was "obstructing" an "official proceeding" for several reasons. Foremost is that Mr. Andries is not accused of committing an act of obstruction. Rather, he is accused of being present at the Capitol where others allegedly committed such acts. Mr. Andries, on the other hand, voiced objections to the Electoral Count.[2] Mr. Andries's presence and words were an expression of his

---

[2] The First Amendment provides that "Congress shall make no law…abridging the freedom of speech." U.S. Const. amend. I. The Constitution protects speech "without regard…to the truth, popularity, or social utility of the ideas and believes offered." *National Ass'n for the Advancement of Colored People v. Button*, 371 U.S. 415, 445 (1963). This American principle is something that rings in the minds of the public every time they express their thoughts, no matter how unpopular those opinions may be. The obstruction statute is impermissibly vague for reasons already discussed, but also because it invites arbitrary enforcement of a law that could abridge one of the most fundamental principles in our country. Now it is true that the Supreme Court has excluded "fighting words" from this protection. *See United States v. Stevens*, 559 U.S. 460, 468 (2010).

First Amendment rights, and there was no criminal intent to do anything more than express his thoughts about the unfairness of the vote. The government argues that his actions were clearly obstruction because he refused to leave a bench long after the members of Congress had been evacuated. *See* Govt. Response at 5. However, nothing in §1512 would indicate that this alleged conduct would constitute a crime. At most, it was an expression of protest by declining to obey orders of the Capitol Police. Mr. Andries did not threaten anyone, was not armed, and did not do anything to actually obstruct, influence, or impede Congress. Any allegation that he "tried to pull a fire alarm" as the government quotes was never founded and were just words. *Id*. The circumstances of his case mirror those of many defendants on that day whose mere presence and words did not place them on notice that they could be committing a felony involving criminal intent to actually obstruct or impede an "official proceeding."

The Supreme Court made it clear that "fighting words" are a very narrow exception to the First Amendment and must "have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed." *Chaplinsky v. New Hamphire*, 315 U.S. 568, 753 (1942). Defendants like Andries were not inciting violence by their expressions of how they felt about the election and by assembling together to express those opinions. Most importantly, they were not addressing their remarks to an individual, but allegedly were rather chanting together as assemblers. Therefore, their words were protected under the First Amendment. Given the tradition of the First Amendment to protect the right of Americans to assemble and petition their government, Mr. Andries's presence and words were protected and he had no notice that he could be committing a felony act of "obstruction."

The government may argue that the collective presence of individuals chanting together was part of the "obstructive" behavior. However, the First Amendment prohibits placing

liability on one for their association with another person. *See N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 887 (1982). Defendants who were merely in the presence of others who took action to obstruct cannot be held responsible for their words, unless there is some kind of direct incitement of those individuals to commit violence. That is not the case here. Mr. Andries, and many other defendants, had no direct bearing on what others in various parts of the crowd on January 6 were doing. The obstruction statute does not apply so broadly as to encompass individuals who did not have the "mens rea" to commit a crime, or even notice that their presence or words could be construed as criminal.

Obstruction statutes have been deemed unconstitutional for infringing on protected expression. *City of Houston v. Hill*, 482 U.S. 451 (1987).[3] In *City of Houston*, the Supreme Court dealt with the question of whether a municipal ordinance prohibiting interrupting police officers in the performance of their duties was overbroad and unconstitutional. *Id.* The Supreme Court held that the enforceable part of the ordinance did not deal with criminal conduct, but speech. *Id.* at 460. In its decision, the Court acknowledged that "speech is often provocative and challenging…[But it] nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. *Id.* (citing *Terminello v. Chicago*, 337 U.S. 1, 4 (1949). For that reason, the Court invalidated the ordinance as vague and unconstitutional. *Id.* Similarly, the opinions allegedly expressed by Mr. Andries was just speech, and no matter how unpopular, cannot be considered "criminal conduct" punishable by the government.

Separate from First Amendment concerns, the government cannot ignore the vagueness

---

[3] *See also Lewis v. City of New Orleans*, 415 U.S. 130 (1974) (invalidating ordinance prohibiting individuals from cursing at police officers while in performance of their duties); *Wilson v. Kittoe*, 229 F. Supp. 2d 520 (W.D. Va. 2002) (obstruction statute for disobeying police orders violated protected expression).

6

of the language of 18 U.S.C. §1512(c)(2).  The government cites to a series of cases to argue that "corruptly" is not vague.  *See* Govt. Response at 17-19.  The government claims the defendant's reliance on *Poindexter* is misplaced, however it is the government that misunderstands the crux of *Poindexter*.  *United States v. Poindexter*, 951 F.2d 369, 379 (D.C. Cir. 1991) The Court ruled *specifically* that the adverb "corruptly" should be read "transitively" and requires that the defendant "corrupt" *another* into violating their legal duty.  The reason that *Poindexter* reached a different outcome than *United States v. Morrison*, 98 F. 3d 619 (D.C. Cir. 1996) was because, in *Morrison*, the word "corruptly" was applied exactly as described in the statute, i.e., by persuading another to violate their legal duty.  *Id*. at 630.  So, *Morrison* and *Poindexter* are not at odds as the government suggests.  Rather, the cases go hand and hand to rule that the word "corruptly" is only clear when it is applied in circumstances where one individual corrupts another to violate their legal duty.  Such circumstances are absent in this case as Mr. Andries did not influence others to violate the law.

      The government further questions *Poindexter* by citing to *Arthur Andersen v. United States*, 544 U.S. 696 (2005).  *Arthur Anderson* involved a jury instruction that failed to "convey the requisite consciousness of wrongdoing." *Id*. at 698.  This holding was not inconsistent with *Poindexter*, which involved an entirely different dispute.  The court in *Arthur Anderson* was simply referring to the modifier, "knowingly," in §1512(b), which does not exist in §1512(c).  *Id*.  The Court's decision in that case had no bearing on why the word "corruptly" was deemed vague in *Poindexter*.  The government repeats the same misunderstanding when it cites to the 7th, 2nd, and 11th circuits.  *See* Govt. Response at 18.  *Poindexter* remains good law and identifies one of the many problems that the word "corruptly" present in the obstruction statute.  It is vague because it does not provide a discernable standard for what conduct is prohibited, thereby

Case 1:21-cr-00093-RC   Document 23   Filed 09/13/21   Page 8 of 10

allowing for arbitrary or discriminatory enforcement as in this case. The government therefore should not be permitted to proceed with this charge against Mr. Andries.

Lastly, the government glosses over why the "residual clause" of §1512 somehow passes the vagueness challenge. *See* Govt. Response at 19-20. The government explains that because the Electoral Count qualifies as an "official proceeding," then that phrase is not vague, but it does not explain why the "catch all" phrase "otherwise obstructs" is not vague or otherwise provides sufficient notice of conduct that is prohibited. Catch-all provisions have been scrutinized carefully by the Supreme Court and have been deemed unconstitutionally vague because of the open-ended and imprecise language of the type in §1512(c). *See e.g., United States v. Johnson*, 576 U.S. 591 (2015); *Sessions v. Dimaya*, 138 S. Ct, 1204 (2018). So too here should this Court deem §1512(c) catchall void for vagueness.

**III.   18 U.S.C. §1752 is Not "Unambiguous" and the Legislative History Suggests the United States Secret Service is the Only Entity Designated to Restrict Areas Under the Statute.**

The government argues that the plain reading of the text of 18 U.S.C. §1752 does not specify who must do the restricting and so there is no need to consider the legislative history. *See* Gov. Res. at pgs. 21-24. However, the language of §1752 is not clear as it reads: "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area" and thereby implies that "someone" must decide what area can be restricted. If the language was unambiguous, it would mean that *any entity* could restrict the Capitol grounds. That cannot possibly be what Congress intended as it would create no guidance to law enforcement. Given this ambiguity, we must look to the legislative history to determine what Congress intended. *See U.S. v. Villanueva-Sotelo*, 515 F.3d 1234, 1237 (D.C. Cir. 2008) (citing *Staples v. United States*, 511 U.S. 600, 605 (1994).

The government is incorrect that the legislative history supports broad authority for any entity to restrict Congressional grounds. *See* Gov. Response at 24-25. The government offers *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2015) in support of this assertion but that case does not involve *who* restricts the areas but rather in *what manner* the area is deemed restricted. In that case, the court held that the presence of law enforcement was sufficient to restrict the area and that §1752 did not require a physical demarcation. *Id*. at 308. The *Bursey* decision simply does not answer who has the authority to restrict the area.

The Senate Judicial Committee report unambiguously vests the Secret Service with the power to set federal restricted areas. S. Rep. No. 91-1252 (1970) at 7. If Congress did not intend to vest that authority with the Secret Service, it would not have named that agency specifically. Moreover, Congress did not remove that authority when it amended §1752 to its current version. The government seems to think that because the current version of the statute does not specifically reference the Secret Service, that Congress purposefully removed it. This assumption is unfounded and would create more uncertainty rather than less given no agency would have the authority to restrict Congressional grounds. This court should not interpret §1752 to provide authority for any entity to restrict the grounds other than the entity that is charged with protecting the President or Vice President and has historically retained such authority.

## CONCLUSION

For all of the reasons discussed above, the defendant John Andries, respectfully requests that the Court dismiss counts 1-3 of the Superseding Indictment because they fail to state an offense and are unconstitutionally vague.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
D.C. Bar No. 1031486
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500
Maria_Jacob@fd.org