**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **Case No. 21-93 (RC)** |
| | ) | |
| **JOHN D. ANDRIES,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF SUPPLEMENTAL MOTION TO DISMISS

The defendant, John Andries, hereby replies to the government's Opposition to the Defendant's Supplemental Motion to Dismiss Counts Two and Three of the Superseding Indictment ("Gov't Opp."), ECF No. 31.

As an initial matter, the government cannot amend the Grand Jury's indictment through a pleading. The indictment in this case charges Mr. Andries with conduct *where the Vice President and Vice President-elect were temporarily visiting.*" Superseding Indictment, ECF No. 15 (emphasis added). The indictment does not charge that "three Secret Service protectees—Vice President Mike Pence and two immediate family members—were present" in the U.S. Capitol building when Mr. Andries is alleged to have violated 18 U.S.C. § 1752. Gov't Opp. at 2. Nor does the indictment charge that Vice President-Elect Harris "'[would] be temporarily visiting.'" *Id*. at 2 n. 2. Therefore, the indictment does not charge what the government now apparently wishes it did and cannot stand on that basis.

In any event, even if the indictment did charge that "three Secret Service protectees— Vice President Mike Pence and two immediate family members—were present" in the U.S.

Capitol building and/or that Vice President-Elect Harris "[would] be temporarily visiting" the U.S. Capitol building, the indictment would still fail to state any offense under § 1752, because none of those individuals were or would be "temporarily visiting" the U.S. Capitol on January 6, 2021 within the ordinary meaning of that term in the context of the criminal statute at issue.[1]

Notably, the government makes no attempt to justify the application of the statute "with respect to" Vice President-Elect Harris (Gov't Opp. at 2 n. 2) and has now filed superseding indictments in numerous cases removing her from January 6 charges altogether. *See, e.g. U.S. v. Sean McHugh*, 21-CR-453(JDB) ECF No. 39; *U.S. v. Isaac Sturgeon*, 21-CR-091 (RCL) ECF No. 53. Therefore, the government has essentially conceded that Counts Two and Three in this case each fail to state an offense "with respect to" Vice President-Elect Harris.

Similarly, the government acknowledges that Vice President Pence lived and worked in the District of Columbia and maintained "a permanent U.S. Capitol office."  Gov't Opp. at 3. The government acknowledges that he was at the U.S. Capitol on January 6 "as President of the Senate," "to preside[] over" and "oversee the Joint Session of Congress."  *Id*. at 3-4.  Contrary to the government's assertion, it is hardly "irrelevant" that Vice President Pence lived and worked in the District of Columbia and had a permanent U.S. Capitol office.  *Id*.  These undisputed facts, and the totality of the undisputed circumstances here, demonstrate that the statute does not apply as a matter of law as the government attempts to apply it.  Nor did Congress intend the statute to apply here.  The "temporarily visiting" part of the statute was promulgated specifically to address the difficulties of protecting the President "when he is outside the White House complex traveling or residing temporarily *in some other section of the country.*"  Auth. Of Sec'y Treasury

---

[1] Nor was the U.S. Capitol building and grounds "posted, cordoned off, or otherwise restricted" because of any Secret Service protectee's presence (or planned presence) there on January 6.

to Ord. Closing of Certain Sts. Located Along the Perimeter of the White House, 19 Op. O.L.C. 109 (1995) ("*Authority of the Secretary*") (emphasis added).[2]  In the floor debate on the bill, legislators discussed "the problems confronting the Secret Service when protecting the President *outside of Washington*."  *Id*. (emphasis added).  Nonetheless, Mr. Andries does not suggest that the statute may apply "only to locations outside the District of Columbia."  *Id*. at 4.  Mr. Andries simply highlights the obvious:  that a person generally cannot be said to be "temporarily visiting" his own office building located approximately four miles from his residence.

Still, the government claims that Vice President Pence was "temporarily visiting" the Capitol because he was "physically present . . . for a particular purpose" and "intended to leave at the close of the session."  *Id*. at 3-4.  According to the government, then, every person "physically present" at the Capitol that day—every Congressperson, every staffer, every U.S. Capitol Police officer—was "temporarily visiting."  By that logic, only a person meandering aimlessly through the Capitol for no purpose, or a person who lived within and never left the Capitol (i.e., no one), would fall outside the scope of "temporarily visiting."  The Court should reject the government's invitation to read all meaning out of an express limitation in a criminal statute.  *United States v. Wiltberger*, 18 U.S. 76, 95 (1820) ("The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself" and "is founded on the tenderness of the law for the rights of individuals . . . .").

To the extent that "two" unidentified "immediate family members" of Vice President Pence (Gov't Opp. at 2, 4 n. 4) are now alleged to constitute a basis to impose federal criminal liability on thousands of people for trespassing on January 6, the government's argument fares no better.  Members of Vice President Pence's family were, in the government's own words,

---

[2] Available at https://www.justice.gov/file/20226/download.

allegedly "present" to "attend" and "to observe" a Congressional meeting in a federal building where the Vice President maintains a *permanent* office and *presides*.  The Vice President's family members were not on vacation or at a speaking event.  That a family member may not work independently or have an independent office at the U.S. Capitol does not transform the U.S. Capitol into a "temporary visit," as expressly required by the criminal statute at issue.  After almost one year of charging January 6 defendants, the government now tries to interject new protectees without providing a basis for why they were "temporarily visiting" as intended by Congress.

"All told:" (Gov't Opp. at 4), the government reads the words "temporarily visiting" out of the statute completely.  Under the government's limitless interpretation, *see* Gov't Opp. at 3, the words "temporarily visiting" are meaningless and superfluous.  "The Government's reading is thus at odds with one of the most basic interpretive canons, that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant . . . .'"  *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see also Colautti v. Franklin*, 439 U.S. 379, 392 (1979) (discussing "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative") (citing *United States v. Menasche*, 348 U.S. 528, 538–539 (1955)).

If Congress wanted to define "restricted building or grounds" to encompass anywhere a Secret Service protectee "is or will be physically present" at any given time, Congress easily could have, and would have, omitted the words "temporarily visiting" or used the words "physically present" instead in § 1752(c)(1)(B).  *See Burgess v. United States*, 553 U.S. 124, 130 (2008) ("As a rule, [a] definition which declares what a term 'means' . . . excludes any meaning that is not stated.") (alteration and ellipsis in original) (quoting *Colautti*, 439 U.S. at 392-393 n.

4

10).  "Congress did not write the statute that way."  *Russello v. United States*, 464 U.S. 16, 23

(1983) (quoting *United States v. Naftalin*, 441 U.S. 768, 773–774 (1979)).  Consequently, the

statute simply does not restrict any government building in which a Secret Services protectee is

or will be "physically present."  *Id*.  Also, "[r]eading the statute to proscribe a wider range of

offensive conduct," as the government urges, "would raise the due process concerns underlying

the vagueness doctrine."  *Skilling v. United States*, 561 U.S. 358, 408 (2010).

Contrary to the government's assertion (Gov't Opp. at 4), it is entirely rational that

section 1752(c)(1)(B) would not apply at the President and Vice President's "permanent

residences in Delaware or California" because state criminal and property law protects all

individuals on their private property and in their private residences.  Congress does not have the

power to federally prosecute and punish any and all criminal conduct anywhere in the United

States:

> Under our federal system, the "'States possess primary authority for defining and
> enforcing the criminal law.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993)
> (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)); *see also Screws v. United
> States*, 325 U.S. 91, 109 (1945) (plurality opinion) ("Our national government is
> one of delegated powers alone. Under our federal system the administration of
> criminal justice rests with the States except as Congress, acting within the scope
> of those delegated powers, has created offenses against the United States"). When
> Congress criminalizes conduct already denounced as criminal by the States, it
> effects a "'change in the sensitive relation between federal and state criminal
> jurisdiction.'"  *United States v. Enmons*, 410 U.S. 396, 411–412 (1973) (quoting
> *United States v. Bass*, 404 U.S. 336, 349 (1971)).

*United States v. Lopez*, 514 U.S. 549, 561 n. 3 (1995).  It is entirely rational and reasonable for

Congress to legislate so as not to exceed the scope of its Constitutional authority.

Lastly, the government's contention that the appropriate construction "would neuter the

government's ability to deter and punish those individuals who seek unauthorized access to the

President's or Vice President's location" (Gov't Opp. at 4) is wholly unsupported.  Section 1752

expressly delineates three definitions of the term "restricted building or grounds" pursuant to which individuals may be criminally punished.  "When 'a statute includes an explicit definition' of a term, 'we must follow that definition . . . .'" *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (quoting *Tanzin v. Tanvir*, 141 S. Ct. 486, 490 (2020)).  In addition, section 3056(d) criminalizes obstruction and interference with a Secret Service officer's performance of his or her "protective functions."  *See also Authority of the Secretary*, 19 Op. O.L.C. at 109 (opining that § 3506 "grants the Secretary broad authority to take actions that are necessary and proper to protect the President").

The government's argument should be directed to Congress to amend the statute, not to request this Court to interpret it contrary to Congress's language.  The Supreme Court has recently rejected the government's attempts to stretch and broaden the interpretation and application of federal criminal statutes.  *See Kelly v. United States*, 140 S.Ct. 1565, 1574 (2020) (finding the government using federal fraud statutes to criminalize regulatory actions of government officials an impermissible and overbroad application of the statute); *Van Buren*, 141 S.Ct. at 1661 (finding the government's broad construction of the computer fraud and abuse statute would implicate a large amount of commonplace activity not meant to be covered by the statute).  This Court should do the same here.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
Maria N. Jacob
D.C. Bar No. 1031486
Assistant Federal Public Defender

625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500
Maria_Jacob@fd.org