UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| v. | ) | No. | 21-cr-093 (RC) |
| **John Andries** | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

## DEFENDANTS RESPONSE TO THE GOVERNMENT'S SENTENCING MEMORANDUM

Mr. Andries, through counsel, submits the following response to the government's sentencing memorandum ("Gov. Memo.") filed on January 10, 2023. Based on the following reasons, a sentence of 24 months' incarceration as the government recommends would be unwarranted and more severe than necessary to accomplish the goals of sentencing.

### I. The Government's Recitation of Some of Mr. Andries's Conduct is Not Accurate and Over Dramatizes the Severity of His Actions

The government first tries to suggest that Mr. Andries was somehow contributing to the aggression by "tossing aside" a tent on the Capitol Grounds. In support of this accusation, the government shows a screenshot of a video that is not clear and does not show Mr. Andries tossing the tent. Gov. Memo at 2-3. In fact, Mr. Andries is not the one who caused the tent to topple to the ground and his contact with the tent's pole was simply so that he could move through to where he needed to go. So while Mr. Andries may have touched the pole, it was not his intention to throw it to the ground rather it was his intention to get past the tent so that he

1

could move forward towards the individuals carrying the flags. *See* Government Exhibit 1 at 1:26-2:06.



The government then implies that Mr. Andries was being aggressive towards law enforcement while in the crypt because he "gesticulated towards the USCP several times." Gov. Memo at 4-5. However, he was not aggressive, did not push them, and as explained in the Defense Sentencing Memorandum ("Def. Memo."), he tried to encourage others not to be aggressive. *See* Def. Memo. at 11-12. *See also* Gov. Exhibit 2.

Next, the government asserts that Mr. Andries pushed an officer on the way out of the Capitol building by relying on a video that is also not clear. Gov. Memo. at 6. In fact, in taking a look at the CCTV footage, it appears as though Mr. Andries is trying to get past an officer who is physically trying to push him out of the building to help another individual caught up in a scuffle. *See* Gov. Exhibit 5. While Mr. Andries's actions are regrettable and he wishes he had just left the building, it was

2

not his intention to push an officer. This is supported by the fact that while being pushed out of the building, he has his hands up and does not push back. *Id.*

Similarly, when the government argues that Mr. Andries "pushed against" officers outside of the building (Gov. Memo. at 6), it relies on a video where the view of Mr. Andries is obstructed by several individuals and law enforcement and it is impossible to tell what is really happening and who exactly is next to him. Notably, it actually looks like he puts his hands up a split second before he breaks away from the group. This video does not show Mr. Andries push against officers.





## II. The Government Fails to Take into Account the Many Mitigating Factors Present that Warrant Consideration

The government recommends 24 months' incarceration even though the parties initially agreed upon an estimated guideline range of 15-21 months and despite consideration of all of the 3553(a) factors.[1] The government's assessment of the 3553(a) factors is limited and does not credit Mr. Andries for (1) cooperating with law enforcement after January 6, 2021, (2) his progress with rehabilitation while on pre-trial release, (3) his unique history and characteristics, and (4) the kinds of sentences available.

Counsel for Mr. Andries went into full detail regarding these factors in the defense sentencing memorandum and will not reiterate those facts now. However, it is important to emphasize that while Mr. Andries made mistakes while on pre-trial release, that he learned from those mistakes and took active steps to rehabilitate. The need for continued rehabilitation is crucial for Mr. Andries and the government's recommendation should consider 18 U.S.C. 3553 (a)(2)(D) just as heavily as the other factors.

Lastly, Mr. Andries's history and characteristics are unique and deserve more consideration. Mr. Andries served our country as a Marine helicopter pilot and was honorably discharged. He was an important and productive member of society

---

[1] While the government does not argue Mr. Andries should not get credit for acceptance responsibility, it notes other courts that did not reverse lower court's decisions to not apply the downward adjustment for acceptance. Notably, these other cases involve defendants who went to trial, had drugs and ammunition in their home on pre-trial release, and who continued to distribute child pornography while on pre-trial release. Gov. Memo. at 8-9 (citing to *United States v. Thomas*, 74 F.3d 701 (6th Cir. 1996) (defendant had a jury trial and was convicted); *United States v. Franks*, 46 F.3d 402, 406 (5th Cir. 1995); *United States v. Hausler*, 409 Fed. Appx. 4, 8 (7th Cir. 2010) (agents testifying at sentencing that they retrieved the illegal distribution of child pornography from a new computer the defendant set up while on pre-trial release)).

who served our country for five years. Mr. Andries did not have to join the military but unselfishly chose to for a noble purpose. Given his extraordinarily high scores on his military entrance exams, Mr. Andries undoubtedly could have pursued higher education and could have chosen any career. Instead, he enlisted in the military. After being honorably discharged, Mr. Andries was a successful individual until matters beyond his control took a hold of his life. *See* Def. Memo. 7-8. It was only then that his legal troubles began, which is notable for many reasons, but mainly because Mr. Andries's life was unexpectedly de-railed creating a domino effect that led to the instant offense as well as his recent legal troubles. But for this life-changing event, it is very likely he would still be working on a government contract and would have never been involved in the instant offense.

      The government also does not consider his volatile child custody matter and the fact that a period of 24 months' incarceration will undoubtedly have an adverse impact on Mr. Andries's already limited custody agreement allowing him only to have unsupervised visitation with his son. Lastly, the government does not consider the adverse impact a significant sentence of incarceration will have on his Veteran's Affairs ("VA") benefits. In *United States v. Leffingwell*, 21-cr-0005 (ABJ), the court recognized the negative impact that a sentence of more than 60 days would have on Mr. Leffingwell's VA benefits. *See Leffingwell* Sentencing Transcript at 52-55. *See also* Exhibit 1, Effects on VA Benefits. The court was concerned that its sentence could be more severe than necessary given those potential adverse impacts. *Id*. The court, however, looked into the regulations and found that Mr. Leffingwell's

dependents could apply to have the benefits apportioned while he was incarcerated and that the benefits would resume after his release. *Id*. However, Mr. Andries is in a very different situation because his only dependent is his 6 year old son, who obviously cannot make applications to the VA. Without this stream of income for 24 months, Mr. Andries will undoubtedly lose his house that he worked so hard to prevent from going into foreclosure. For these reasons, a sentence of more than 60 days would be a sanction higher than necessary to accomplish the goals of sentencing.

The court in *United States v. Matthew Wood*, 21-cr-223 (APM), noted when imposing a non-incarceration sentence that, "I don't think this sentence should ruin your life," and that judges may impose consequences "without simply putting somebody in jail for the sake of putting them in jail.[2]" The government has been quick to suggest severe periods of incarceration for January 6 defendants suggesting it is the only way to ensure specific and general deterrence. However, that is simply not true and the government's recommended sentences if imposed would result in sentences that are inapposite to the Supreme Court mandate that federal courts must impose the "least amount of imprisonment necessary to accomplish the purposes of sentencing set forth in 18 U.S.C. §3553(a)." *Kimbrough v. United States*, 552 U.S. 84 (2007); *Gall v. United States*, 552 U.S. 38 (2007). Mr. Andries has never served more than 10 days of jail and the government's

---

[2] Tom Jackman and Spencer Hsu, *Review of Jan. 6 cases finds judges give harsh lectures, lighter sentences*, Washington Post, January 6, 2023 available at https://www.washingtonpost.com/dc-md-va/2023/01/06/jan6-capitol-riot-sentencings/ (last viewed on January 13, 2023).

recommendation is for him to serve 23 months and 20 days more than his last sentence with no real analysis as to why such a sentence would be the least amount of imprisonment necessary to accomplish the goals of sentencing.

### III. The Government's Sentencing Recommendation is Not Supported by Past Sentences Imposed for Similar Conduct

The government's only support for its recommendation is a case that was before this Court where the defendant entered a guilty plea to Assault on a Police Officer. Gov. Memo. at 18 (citing *United States v. Ricky Wilden*, 21-cr-423 (RC)). However, that case is not comparable for many reasons. As an initial matter, the government in that case requested the Court to impose a sentence of 30 months' incarceration, however the Court imposed a sentence of 24 months' incarceration, which was the low-end of the sentencing guidelines. Secondly, Mr. Wilden entered a guilty plea to Assaulting an Officer after admitting to spraying U.S. Capitol Police with a chemical irritant. Besides the fact that Mr. Wilden pled guilty to a violent act, there are many other distinguishing factors between the two cases that make it not suitable for comparison.

- Mr. Wilden traveled from California as a self-professed member of the Proud Boys equipped with goggles and a canister of chemical irritant.
- The government accused Mr. Wilden of spraying officers with a chemical irritant as they were trying to prevent the breach of the East Rotunda Doors, which was a violent breach that led to many assaults on officers.
- The government accused Mr. Wilden of posting statements after January 6 indicating he was proud of spraying the officer.

- The government accused Mr. Wilden of destroying evidence from his phone after January 6, 2021.

The government also discusses Mr. Wilden's mitigating circumstances in trying to suggest that those factors are absent in Mr. Andries's case. Gov. Memo at 18. However, that is simply not the case and further demonstrates the fact that the government has failed to consider Mr. Andries's many mitigating factors that are just as impactful as Mr. Wilden's circumstances. For these reasons, Mr. Wilden's sentence does not support a similar sentence for Mr. Andries.

If the government wished to present a more fair analysis of defendants who pled guilty to Assault, it should have also presented Mark Leffingwell, who was sentenced to 6 months' incarceration with a guideline range of 24-30 months.[3] *United States v. Leffingwell*, 21-cr-0005 (ABJ). Mr. Leffingwell was also a Veteran and although he punched two law enforcement officers, he did not pre-plan his actions, was not a member of any extremist group, and he became a disabled Veteran after serving our country. He also accepted responsibility for his conduct. Furthermore, there a handful of other past Assault cases that led to substantial variant sentences. *See United States v. Matthew Miller*, 21-cr-075 (RDM) (government asked for 51 months' incarceration and court imposed 33 months' incarceration); *United States v. Thomas Webster*, 21-cr-208 (APM) (government request 210 months' incarceration and court imposed 120 months' incarceration);

---

[3] The court also recognized the disparity in the Assault guidelines when applying USSG §2A2.2 versus 2A2.4 and its associated enhancements that it thought were redundant of the charge.

8

*United States v. Lucas Denney*, 22-cr-070 (RDM) (government requested 86 months' incarceration and court imposed 52 months' incarceration); *United States v. Troy Sargent*, 21-cr-258 (TFH) (court imposed variant sentence of 14 months' incarceration despite government's request for 27 months' incarceration).

Lastly, the government provides only one case where a defendant entered a plea to 18 U.S.C. §1512(c)(2) in support of its recommendation. Gov. Memo. at 8-9 (citing *United States v. Christin Priola*, 22-cr-242 (TSC)). However, that case is just one among many other §1512(c)(2) cases where variant sentences were imposed. *See United States v. Richard Michetti*, 21-cr-232 (CRC) (government requested 18 months' incarceration and court imposed 9 months' incarceration); *United States v. Hale-Cusanelli*, 21-cr-37 (TNM) (court imposed 48 months' incarceration despite government's request for 78 months' incarceration); *United States v. Christian Secor*, 21-cr-157 (TNM) (court imposed variant sentence of 42 months' incarceration despite government's request for 57 months' incarceration); *United States v. Matthew Bledsoe*, 21-cr-204 (BAH) (government requested 70 months' incarceration and court imposed 48 months); *United States v. Seefried Hunter*, 21-cr-287 (TNM) (court imposed variant sentence of 24 months despite governments request for 64 months' incarceration) *United States v. Dustin Thompson*, 21-cr-161 (RBW) (court imposed sentence of 36 months' incarceration even after government requested 70 months); *United States v. William Reid*, 21-cr-316 (DLF) (government requested 78 months' incarceration and Court imposed 37 months).

While there are no two cases alike, the courts have been considering carefully all of the 3553(a) factors and mostly granting variances because of the many unique considerations that arise in most criminal cases, including Jan. 6 cases, which the sentencing guidelines do not adequately take into consideration. A sentence of 24 months' incarceration would not be consistent with past sentences imposed and does not take into account Mr. Andries's individual factors that weigh in favor of a variance.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave. NW, Ste. 550
Washington, D.C. 20004
(202) 208-7500
Maria_jacob@fd.org